In the Matter of CHRISTOPHER S. SCO FAMILY OF SERVICES, Respondent; ELIZABETH S. et al., Appellants. [63 NYS3d 490]—

Separate appeals by the mother and the father from an amended order of fact-finding and disposition of the Family Court, Queens County (Mary O'Donoghue, J.), dated August 8, 2016. The amended order, after fact-finding and dispositional hearings, found that both parents had permanently neglected the subject child, terminated the parental rights of both parents, and transferred guardianship and custody of the child to the Commissioner of Social Services of the City of New York and SCO Family of Services for the purpose of adoption.

Ordered that the amended order of fact-finding and disposition is affirmed, without costs or disbursements.

The subject child was born in May 2007, and was placed in foster care upon his discharge from the hospital. He has lived with the same foster mother since September 2007. In 2010, the petitioner commenced this proceeding pursuant to Social Services Law § 384-b to terminate the mother's parental rights on the basis that she was unable to care for the child due to her mental illness, and to terminate both parents' parental rights on the basis of permanent neglect. Thereafter, the petitioner withdrew the cause of action alleging mental illness with respect to the mother. After fact-finding and dispositional hearings, the Family Court issued an amended order of fact-finding and disposition, dated August 8, 2016, finding that the parents permanently neglected the child, terminating their parental rights, and transferring custody and guardianship of the child to the Commissioner of Social Services of the City of New York and the petitioner for the purpose of adoption. The parents separately appeal.

The mother's contention that the petition was jurisdictionally defective since it failed to plead in detail the diligent efforts undertaken by the petitioner to encourage and strengthen the parents' relationship with the child is unpreserved since it is raised for the first time on appeal (*see Matter of Ana M.G. [Rosealba H.]*, 74 AD3d 419, 419 [2010]; *Matter of Gina Rachel L.*, 44 AD3d 367, 368 [2007]). In any event, a review of the petition reveals that the allegations were sufficient to notify the parents of the grounds on which the permanent neglect petition was predicated (*see Matter of Kevin J.*, 55 AD3d 468, 468 [2008]; *Matter of Gina Rachel L.*, 44 AD3d at 368). Moreover, even if the diligent efforts were not sufficiently pleaded in detail, such a deficiency would not be fatal, where, as here, the evidence presented at the fact-finding hearing, including the progress notes and the testimony of the caseworker, demonstrated the diligent efforts taken by the petitioner to assist the

parents in formulating a plan for return of the child (*see Matter of Gina Rachel L.*, 44 AD3d at 368; *Matter of Kimberly Vanessa J.*, 37 AD3d 185, 185 [2007]).

Contrary to the parents' contention, the petitioner established, by clear and convincing evidence, that it made diligent efforts to encourage and strengthen their relationship with the child, which efforts were specifically tailored to the parents' individual situation (*see* Social Services Law § 384-b [7] [a]; *Matter of Hailey ZZ. [Ricky ZZ.]*, 19 NY3d 422, 430 [2012]; *Matter of Shaquan D.M. [Shaquanna M.]*, 150 AD3d 1119, 1119-1120 [2017]). These efforts included, inter alia, making referrals to mental health, parenting, and housing services, following up with those programs, encouraging compliance with the programs, and facilitating visitation (*see* Social Services Law § 384-b [7] [f]; *Matter of Melisha M.H. [Sheila B.R.]*, 119 AD3d 788, 788 [2014]; *Matter of Elasia A.D.B. [Crystal D.G.]*, 118 AD3d 778, 779 [2014]; *Matter of Darryl A.H. [Olga Z.]*, 109 AD3d 824, 824 [2013]). Despite these efforts, the parents failed to plan for the child's future. During the relevant time period, the mother was hospitalized in a psychiatric hospital after she stopped taking her medication, and both parents failed to successfully complete parenting skills programs or gain insight into their previous behavior and the need for services, refused to take random drug tests, and failed to attend visitation consistently. Contrary to the parents' contention, consideration of events which took place between the child's initial placement and the filing of the petition on June 8, 2010, did not preclude a finding of permanent neglect since the evidence established that the parents had not fully complied with services as of that date (*cf. Matter of Tatianna K. [Claude U.]*, 79 AD3d 1184, 1187 [2010]). The parents' "belated partial compliance with the service plan was insufficient to preclude a finding of permanent neglect" (*Matter of Elasia A.D.B. [Crystal D.G.]*, 118 AD3d at 779; *see Matter of Tarmara F.J. [Jaineen J.]*, 108 AD3d 543, 544 [2013]; *Matter of Hadiyyah J.M. [Fatima D.R.]*, 91 AD3d 874, 875 [2012]), and there was clear and convincing evidence of the parents' permanent neglect of the child (*see Matter of Jeremy J.M. [Brandy T.]*, 118 AD3d 796, 797 [2014]; *Matter of Mekhi Kahalil G. [Ainsley M.J.]*, 99 AD3d 1003, 1005 [2012]).

Moreover, the Family Court properly determined that termination of the parents' parental rights was in the child's best interests (*see* Family Ct Act § 631; *Matter of Stephon B.M. [Barry J.M.]*, 149 AD3d 1080, 1080 [2017]; *Matter of Hector V.P. [Mariana V.]*, 146 AD3d 889, 890 [2017]). Contrary to the parents' contention, the entry of a suspended judgment was

not appropriate in light of their continued lack of insight into their problems, and their failure to acknowledge and address the issues preventing the return of the child to their care (*see Matter of Shaquan D.M. [Shaquanna M.]*, 150 AD3d at 1120; *Matter of Lasuree A.B. [Carla S.B.]*, 141 AD3d 578, 579 [2016]).

The parties' remaining contentions are without merit. Balkin, J.P., Leventhal, Austin and Iannacci, JJ., concur.